UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ARI TEMAN,**
Plaintiff,
v.

**UNITED STATES PROBATION SERVICE,**
**RISELDA R. RUIZ, CHIEF UNITED STATES**
**PROBATION OFFICER,** in her official capacity,
**JOHN CARLES, SUPERVISING PROBATION**
**OFFICER,** in his official and individual capacities,
**JACOB GUTTWILLIG, ASSISTANT U.S. ATTORNEY,**
in his official and individual capacities,
**DEPARTMENT OF JUSTICE ADMINISTRATIVE**
**OFFICE OF THE U.S. COURTS,**
**HARMEET DHILLON, HEAD OF DOJ CIVIL RIGHTS**
**DIVISION,** in her official capacity,
**DEPARTMENT OF JUSTICE CIVIL RIGHTS**
**DIVISION,**
Defendants.

Case No.: [To Be Assigned]

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND BIVENS v. SIX UNKNOWN NAMED AGENTS**

# INTRODUCTION

- Plaintiff Ari Teman, acting pro se, brings this action to remedy severe violations of his constitutional rights under the First, Fifth, and Sixth Amendments to the United States Constitution, perpetrated by Defendants through a retaliatory campaign against his lawful exercise of protected rights. Defendants United States Probation Service, Chief Probation Officer Riselda R. Ruiz, Supervising Probation Officer John Carles, and Assistant U.S. Attorney Jacob Guttwillig are responsible for rescinding a recommendation (Dkt. 483 in *United States v. Teman*) that Plaintiff transition to unsupervised probation and reside indefinitely in Israel, a decision integral to his religious obligations as a Jewish individual. This rescission followed Plaintiff's email to Guttwillig asserting prosecutorial misconduct, including Brady violations and ex parte communications, and

1

- urging dismissal of his case, supported by public statements from legal scholars (EXHIBIT 5). No physical threats of any kind were made in the email (Exhibit 1), and similar allegations of prosecutorial misconduct were made against Guttwillig's office by the Attorney General, Ms. Bondi, and DOJ Head of Civil Rights, Ms. Dhillon, themselves. It is standard practice to threaten opposing counsel with sanctions and disciplinary actions for alleged acts of misconduct such as disclosure violations and thus completely unconstitutional to rescind a recommendation that Teman be able to live in Israel in accordance with his faith due to this letter -- which to be clear is the black-and-white exact reason for the recommendation (Dkt. 483-1, Attached as Exhibit 2).

- On February 24, 2025, Plaintiff emailed to Defendants Ruiz, Carles, and Probation Officer Jimmy Wong, with copies to the DOJ. The letter provided formal notice to cure these violations, detailing infringements of Plaintiff's rights to free speech, due process, self-representation, and free exercise of religion. Defendants, including Dhillon and the DOJ Civil Rights Division, whose mandate includes preventing such violations, have failed to respond or rectify the harm, necessitating this lawsuit.

- Plaintiff seeks injunctive relief to restore his constitutional protections, compel disclosure of all relevant communications, including those involving U.S. District Judge Paul A. Engelmayer, and reinstate the recommendation to live in Israel, consistent with his religious obligations.

## JURISDICTION AND VENUE

- This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights), as this action arises under the U.S. Constitution, 42 U.S.C. § 1983 (for actions under color of law), and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) (for federal actors' constitutional violations).

- Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(e) because a substantial part of the events giving rise to this claim occurred in this district. The underlying

criminal case (*United States v. Teman*) was adjudicated in SDNY, Defendant Guttwillig operates as an AUSA here, and the Probation Service's actions directly impacted Plaintiff's supervision within SDNY's jurisdiction. Alleged ex parte communications involving Judge Engelmayer occurred in this district, tying the violations to SDNY. Although Defendants Ruiz, Dhillon, and DOJ entities are based in Washington, D.C., the localized impact in SDNY makes this the appropriate forum.

## PARTIES

- Plaintiff Ari Teman is an individual under probation supervision following his conviction in *United States v. Teman* (Case No. 1:19-cr-00696 ) in the Southern District of New York. He resides in Israel, consistent with his religious obligation to settle in Israel. (See attached letter from Chief Rabbi of Modiin (Exhibit 3)).
- Defendant United States Probation Service is a federal agency under the Administrative Office of the U.S. Courts, responsible for Plaintiff's probation supervision and the unconstitutional rescission of its recommendation.
- Defendant Riselda R. Ruiz is the Chief United States Probation Officer, based in Washington, D.C., who made, oversaw, or ratified the recommendation and its rescission.
- Defendant John Carles is the Supervising Probation Officer assigned to Plaintiff's case in SDNY, who directly participated in the rescission.
- Defendant Jacob Guttwillig is an Assistant U.S. Attorney in the Southern District of New York who prosecuted Plaintiff and triggered the retaliation by forwarding Plaintiff's email to Probation.
- Defendant Department of Justice Administrative Office of the U.S. Courts, headquartered in Washington, D.C., oversees the Probation Service and failed to prevent these violations.
- Defendant Harmeet Dhillon is the Head of the DOJ Civil Rights Division, responsible for overseeing civil rights protections, including preventing constitutional violations like those alleged here, which occurred under her watch, and of which she was made aware by email.

- Defendant Department of Justice Civil Rights Division, based in Washington, D.C., is tasked with enforcing civil rights laws and failed to intervene to protect Plaintiff's rights.

---

## FACTUAL ALLEGATIONS

- Following Plaintiff's conviction in *United States v. Teman*, the United States Probation Service, under Defendant Riselda R. Ruiz's direction, issued a recommendation (Dkt. 483) that Plaintiff transition to unsupervised probation and reside indefinitely in Israel. This aligned with Plaintiff's deeply held religious beliefs as a Jewish individual, as affirmed by a letter from Rabbi Yaakov Chikotai, Chief Rabbi of Modi'in, Israel, stating that settling in Israel is a fundamental tenet of Plaintiff's faith.
- The Government confirmed that Probation did not oppose Teman's request to move to remotely-monitored supervision and to live in Israel, "The Probation
- Office, as also set forth above, does not object to Teman's request." As quoted by the Government in Dkt. 474 (EXHIBIT 1), Officer Wong wrote:

    > "**The U.S. Probation Office would not be opposed to the defendant's motion to extend his time in Israel**[1] as the **defendant has satisfied all his monetary obligations and has been compliant with his conditions of supervised release since he started supervision.** Additionally, he has also been responsive to requests from the U.S. Probation Office. The U.S. Probation Office currently utilizes the evidence-based practice of the Risk-Needs-Responsivity Principle in supervising clients. As part of this principle, the Post-Conviction Risk Assessment Tool (PCRA) is utilized to determine the risk of recidivism posed by an individual. The PCRA indicated a low risk of recidivism for Mr. Teman with no dynamic risk factors identified. Based on the PCRA, low risk individuals have only a 3% re-arrest

---

[1] Emphasis added for the Court's convenience.

rate within the first 180 days from the initial assessment performed at the onset of supervision and less than a 1% revocation rate. Additionally, Mr. Teman was also categorized and scored with a Criminal History Category 1 during his presentence interview. Mr. Teman's compliance appears consistent with what is normally expected by clients under low-risk supervision, and he has not presented extenuating circumstances regarding the burden probation has on him. Evidence shows placing these individuals on a "Low Intensity Supervision" caseload is appropriate, in which clients require minimal supervision and field work is not required unless there is a change in circumstances. **The U.S. Probation Office does not object to the defendant's motion to extend his time in Israel.** If approved the defendant's case would be supervised as noted. The defendant has a supervised release file in the National Crime Information Center (NCIC) system **which would alert the U.S. Probation Office if Mr. Teman returned to the United States at any time. Additionally, if needed Mr. Teman could be instructed to conduct telephonic check ins or monthly online reports to account for his whereabouts**. **All if any financial documents requested by U.S. Probation could also be collected through email and credit checks could be conducted if needed through a Credit Bureau Inquiry from U.S. Probation.** If Mr. Teman were to not be in compliance with any of his conditions, he would be subject to the consequences and violations of supervised release."

- On or about Nov 6, 2024, following the election, Plaintiff, acting pro se, emailed Defendant Jacob Guttwillig, warning of potential disciplinary action under the incoming Trump administration for alleged prosecutorial misconduct, including Brady violations and ex parte communications with U.S. District Judge Paul A. Engelmayer, as evidenced in Dkt. 321-1 (https://www.courtlistener.com/docket/16254142/321/1/united-states-v-teman/ ). Plaintiff urged dismissal, citing public statements by legal scholars on JusticeForAri.org, X.com, television, radio, and podcasts, asserting --as have many law professors and other legal experts -- no crime or intent was proven.  (EXHIBIT 2)

5

- Defendant Guttwillig forwarded this email to the Probation Service, including Defendants Ruiz and Carles, who rescinded the recommendation, labeling the email "coercive and intimidating." This characterization is baseless, as the email contained no physical threats and was a protected exercise of Plaintiff's First Amendment rights to free speech and petition for redress.
- The officer again stressed Teman has been in full compliance with supervision for the duration of this case (6 years!) make the recision in retaliation for a non-violent threat of impending sanctions and *intra-DOJ* disciplinary action even more eggregious:
    - "On January 7, 2025, Assistant United States Attorney (AUSA) Jacob H. Gutwillig contacted this officer for a response in the defendant's motion to extend his travel in Israel and to be placed on non-reporting supervision. In the defendant's motion he indicated he was requesting an extension because of the ongoing war. On this same date, this officer discussed the defendant's motion with his supervisor, and it was agreed **U.S. Probation would not oppose to the defendant'**s motion to extend his travel in Israel, due to the defendant's compliance with his supervised release conditions and low risk of recidivism."
- Defendant Wong makes clear that Teman's email to Guttwillig is the *only* factor that motivated the recision: "This officer was unaware of the defendant's email that was sent previously to AUSA Gutwillig on November 6, 2024, at the time this officer responded to AUSA Gutwillig with U.S. Probation's position on January 7, 2025."
- **Notice to Cure Constitutional Violations**: On February 24, 2025, Plaintiff emailed a letter via ECF in *United States v. Teman* addressed to Defendants Ruiz, Carles, and Probation Officer Jimmy Wong, with copies to Attorney General Pam Bondi, Harmeet Dhillon, and others. The letter detailed the following violations and requested immediate rectification:
    - **First Amendment – Free Speech**: The rescission punished Plaintiff's email, chilling his ability to address prosecutorial misconduct without retaliation.
    - **Fifth Amendment – Due Process**: As a pro se defendant, Plaintiff was entitled to negotiate and challenge misconduct, but the rescission imposed punitive consequences, denying fair process.

6

- **Sixth Amendment – Right to Defend**: The rescission discouraged Plaintiff's self-representation by penalizing advocacy against irregularities, such as ex parte communications.

- **First Amendment – Free Exercise of Religion**: The rescission blocked Plaintiff's religious obligation to live in Israel, as affirmed by Rabbi Chikotai.

  Defendants, including Dhillon and the DOJ Civil Rights Division, have failed to respond or cure these violations, despite their duty to protect Plaintiff's rights.

- **Alleged Misconduct Involving Judge Engelmayer**: The rescission was influenced by or occurred in the context of ex parte communications involving Judge Engelmayer, who presided over *United States v. Teman*. Dkt. 321-1 reveals Engelmayer admitted to such communications, which Plaintiff alleges facilitated the retaliatory response to his email. The February 24, 2025 letter notes Engelmayer's impeachment proceedings by the 119th Congress for alleged corruption, including these communications, underscoring the need for disclosure to ensure transparency.

- **Religious Obligation**: The rescission violates Plaintiff's free exercise rights. Rabbi Chikotai's letter confirms settling in Israel as a religious duty, not outweighed by monitoring excuses, as Probation admits mental health and banking can be tracked remotely (e.g., online therapy, digital records). Remote verification (e.g., video calls) negates any need for Plaintiff's return.

- **DOJ Civil Rights Division's Failure**: Defendants Dhillon and the DOJ Civil Rights Division, tasked with preventing civil rights violations, failed to intervene despite notice via the February 24, 2025 letter, allowing the violations to persist under their watch.

- **Impact**: The rescission has caused Plaintiff and his elderly parents severe fear and trauma, rendering return to the U.S. unsafe. Public support for Plaintiff's innocence, documented on JusticeForAri.org and X.com, underscores the chilling effect of Defendants' actions.

- Defendant Guttwillig misrepresented Plaintiff's statements and medical conditions and engaged in ex parte communications (Dkt. 321-1). The Administrative Office failed to supervise Probation.
- Plaintiff's letter requested preservation of all communications, including ex parte records, which Defendants have not provided.

## CAUSES OF ACTION

### Count I: Violation of First Amendment – Free Speech (All Defendants)

24. Plaintiff incorporates paragraphs 1–23 and all prior paragraphs.

25. Defendants retaliated against Plaintiff's protected speech, chilling his advocacy against misconduct (Letter, Feb. 24, 2025).

### Count II: Violation of First Amendment – Free Exercise of Religion (Probation Service, Ruiz, Carles, Administrative Office, Dhillon, DOJ Civil Rights Division)

26. Plaintiff incorporates paragraphs 1–23 and all prior paragraphs.

27. Defendants' rescission burdens Plaintiff's religious duty to live in Israel without compelling justification and the DOJ Civil Rights division is responsible for preventing such violations. Harmeet Dhillon has publicly stated, as has her firm (Attached, letter of Dhillon Law Partner Ronald Coleman) that Teman is innocent and should be pardoned or the case dismissed, making such a religious rights violation even more egregious (It is the plaintiff's hope that Ms. Dhillon was simply overwhelmed by the new job and will remedy this injustice now.)

### Count III: Violation of Fifth Amendment – Due Process (All Defendants)

28. Plaintiff incorporates paragraphs 1–23 and all prior paragraphs.

29. The rescission punitively targeted Plaintiff's pro se negotiations, denying fair process.

### Count IV: Violation of Sixth Amendment – Right to Defend (All Defendants)

30. Plaintiff incorporates paragraphs 1–23 and all prior paragraphs.

31. Defendants' retaliation chilled Plaintiff's self-representation (Letter, Feb. 24, 2025).

**Count V: *Bivens* Claim – Individual Liability (Guttwillig, Wong, Ruis, Carles)**

32. Plaintiff incorporates paragraphs 1–23 and all prior paragraphs.

33. Guttwillig, Wong, Ruiz, and Carles, under federal authority, knowingly violated Plaintiff's constitutional rights.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

- **Order Disclosure**: Direct Defendants to disclose all emails, texts, phone logs, notes, and documents related to the rescission, Plaintiff's email, ex parte communications, and interactions in the February 24, 2025 letter or Dkt. 321-1, as well as any and all ex parte emails, calls, messages, etc. with Noam Biale, Justine Harris, and/or anyone at the law firm of Sher Tremonte due to the undisclosed conflict between Teman's defense attorney Noam Biale and his marriage to AUSA Graham.

- Order U.S. District Judge Paul A. Engelmayer as well as his staff (Arthur_Smallman, and all clerks, interns, etc) to disclose all records of ex parte communications or discussions about Plaintiff or *United States v. Teman*, including those in Dkt. 321-1. As well as any and all ex parte emails, calls, messages, etc. with Noam Biale, Justine Harris, and/or anyone at the law firm of Sher Tremonte.

- **Rescind Probation Change**: Order Probation Service, Ruiz, and Carles to reinstate the recommendation (Dkt. 483) for unsupervised probation( or remotely-supervised probation) and residency in Israel.

- **Restrain Guttwillig**: Order Guttwillig to cease interference, correct misstatements about Plaintiff's statements or medical conditions, and disclose ex parte communications.

9

- **Third-Party Discovery Vendor**: Order the Department of Justice and Defendant Guttwillig to utilize a neutral third-party discovery vendor to collect, preserve, and produce any and all messages, emails, texts, and other communications regarding Plaintiff Ari Teman or *United States v. Teman*, to ensure impartiality and transparency given allegations of prosecutorial misconduct.

- **Assign Taint Team from Another District**: Order the appointment of a "taint team" from a district outside SDNY to review any and all emails, messages, and communications related to *United States v. Teman* by SDNY personnel, including the U.S. Attorney's Office and Probation Service, to address the risk of bias due to alleged retaliatory and unconstitutional actions.

- **Stay Return from Israel**: Stay any requirement for Plaintiff to return from Israel until resolution of civil rights issues related to probation's retaliatory recision , including appeals, to prevent irreparable harm to Plaintiff's rights and setting an unconstitutional precedent that encourages the DOJ to retaliate for non-violent email threats of sanctions.

- **Disclose Ex Parte Communications**: Order Probation Service, Administrative Office, and Judge Engelmayer to disclose all ex parte discussions about Plaintiff or *United States v. Teman*.

- Grant other just relief, including costs and fees.

# VERIFICATION

I, Ari Teman, declare under penalty of perjury that the foregoing is true and correct to the best of my limited abilities.

Dated: June 1, 2025  ( 5th of Sivan, 5785 )
        /s/ Ari Teman
        Ari Teman, Plaintiff Pro Se
        Tel Aviv, Israel

**List of Exhibits**

- **Exhibit 1: Government's Confirmation of Probation's Non-Opposition (Dkt. 474)**
    - Description: A document from *United States v. Teman* (Dkt. 474) quoting Probation Officer Jimmy Wong's statement that the U.S. Probation Office does not oppose Teman's request to move to remotely-monitored supervision and reside in Israel, citing Teman's compliance, low recidivism risk, and ability for remote monitoring.

- **Exhibit 2: Plaintiff's Email to Jacob Guttwillig**
    - Description: The email sent by Plaintiff to Guttwillig on or about November 6, 2024, warning of disciplinary action for prosecutorial misconduct

- **Exhibit 3: Letter from Rabbi Yaakov Chikotai, Chief Rabbi of Modi'in, Israel**
    - Description: A letter affirming that settling in Israel is a fundamental tenet of Plaintiff's Jewish faith, supporting his religious obligation to reside there indefinitely.

- **Exhibit 4: February 24, 2025 Letter to Probation Service**
    - Description: The letter filed via ECF in *United States v. Teman*, addressed to Defendants Ruiz, Carles, and Wong, with copies to Pam Bondi, Harmeet Dhillon, and others, providing notice to cure constitutional violations (free speech, due process, self-representation, free exercise).

- **Exhibit 5: Public Statements by Legal Scholars (JusticeForAri.org and X.com)**
    - Description: A compilation of public statements from legal scholars, law professors, and experts on JusticeForAri.org, X.com, television, radio, and podcasts, asserting no crime or intent was proven in *United States v. Teman*.

- **Exhibit 6: Letter from Ronald Coleman, Dhillon Law Partner**
    - Description: A letter from Ronald Coleman, a partner at Dhillon Law, stating that Teman is innocent and should be pardoned or the case dismissed, reinforcing the egregiousness of the religious rights violation under Harmeet Dhillon's oversight.

- **Exhibit 7: Docket Entry 321-1 from United States v. Teman**
    - Description: A court document (https://www.courtlistener.com/docket/16254142/321/1/united-states-v-teman/) revealing Judge Engelmayer's admission to ex parte communications, cited as evidence of misconduct facilitating the retaliatory rescission.