```
XK1AHTEM                        SEALED
```

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
3   UNITED STATES OF AMERICA,
4              v.                              19 Cr. 696 (PAE)
5   ARI TEMAN,
6                                              Conference
               Defendant.
7
    ------------------------------x
8
                                               New York, N.Y.
9                                              January 10, 2020
                                               10:45 a.m.
10
11  Before:
12                  HON. PAUL A. ENGELMAYER,
13
                                               District Judge
14
15                        APPEARANCES
16  GEOFFREY S. BERMAN
         United States Attorney for the
17       Southern District of New York
    KEDAR SANJAH BHATIA
18  EDWARD IMPERATORE
         Assistant United States Attorneys
19
    JOSEPH ANDREW DiRUZZO III
20  JUSTIN GELFAND
         Attorneys for Defendant
21
    Also Present:  William Magliocco, Paralegal Specialist USAO
22
23
24
25

1           (In the robing room)
2           THE COURT:  All right.  Good morning, everyone.  I'm
3   here in my robing room with counsel for both sides,
4   specifically Mr. Imperatore and Mr. Bhatia.  Good morning to
5   both of you.  Happy New Year.
6           MR. IMPERATORE:  Good morning, your Honor.
7           THE COURT:  For the defense, Mr. DiRuzzo?
8           MR. DIRUZZO:  Yes.
9           THE COURT:  And Mr. Gelfand?
10          MR. GELFAND:  Good morning.
11          THE COURT:  And the defendant, Mr. Teman, good
12  morning.
13          THE DEFENDANT:  Good morning, your Honor.
14          THE COURT:  The initial part of this conference, very
15  briefly, will be maintained under seal.  I have a court
16  reporter here, but the transcript of what is to be said in the
17  robing room here is to be accessible to counsel in this case
18  only.  The transcript itself is, not without permission of the
19  Court, to be publicly filed.
20          I want to follow up on a phone conference we had in
21  December prompted by Mr. Teman's note to me that was in
22  considerable distress.  I'm really just concerned about how
23  Mr. Teman is doing.  Can counsel give me an update as to how
24  he's doing.
25          MR. DIRUZZO:  Your Honor, my understanding is

1  Mr. Teman is doing fine. No further instances have happened,
2  nothing that required hospitalization or the like, so --
3           THE COURT: Have you been personally keeping tabs on
4  the state of whatever treatment he is receiving?
5           MR. GELFAND: Your Honor, this is Justin Gelfand for
6  the record. I have been speaking regularly with Mr. Teman, and
7  it's my understanding that he's been under the care of multiple
8  healthcare providers, including a mental health care provider,
9  and a sleep specialist. There was a diagnosis, as I understand
10 it. Maybe that's too strong of a word, but Mr. Teman has
11 managed to get his sleep situation better under control, and he
12 has expressed to me that he's noticed a considerable difference
13 based on that and following that care.
14          So, as a practical matter, I think that under the
15 circumstances, obviously, the case is inevitably very
16 stressful, but he's doing well under the circumstances and
17 certainly much better than when we had our other telephone
18 conference.
19          THE COURT: I'm glad to hear that. I had remembered
20 that it had been expressed on the call that sleep problems may
21 have been at the heart of some of the anguish in the note. I'm
22 glad to hear that's being addressed.
23          MR. GELFAND: Yes, your Honor.
24          THE COURT: May I address your client. I don't want
25 to pry, but I want to make sure.

1          MR. GELFAND:  Sure.
2          THE COURT:  Mr. Teman, I want to take stock on how
3    you're doing.
4          THE DEFENDANT:  It's not the best six months of my
5    life, but I went to an ENT and then a sleep specialist.  The
6    ENT said walk three miles a day, which is just looping around
7    South Beach.  I did that, then I went to the sleep specialist.
8    He said you're under federal indictment.  I'm going to give you
9    this drug, and it's going to get you five hours of sleep.
10   Still do the walking and swimming, but the drug is winning.  I
11   wasn't getting REM sleep.  So I have a tracker.  I was getting
12   5 to 6 percent REM.  I'm getting 20 to 25 percent REM now.
13         THE COURT:  Here's the important thing.  The emotions
14   that you expressed in that letter, to the extent that they were
15   an impulse to hurt yourself, have those gone away?
16         THE DEFENDANT:  Yes.
17         THE COURT:  You're confident that you are in a better
18   place.  I realize being under indictment is not a good place,
19   but your suicidal state of mind is all gone; you have no
20   impulses like that at all?
21         THE DEFENDANT:  None.
22         THE COURT:  Will you promise me if you have any
23   impulse at all like that, you'll immediately notify both your
24   counsel in this case, the specialist or specialists whom you
25   are seeing?

```
 1              THE DEFENDANT:  Yes, your Honor.
 2              THE COURT:  Very good.  Anything further I need to
 3    raise as to any of those things?
 4              MR. BHATIA:  Nothing from the government.
 5              THE COURT:  Most of all, I want to wish you well.  I
 6    realize I'm here in a role presiding over a prosecution of you.
 7    I'm also a human being, and I read a note from a person in
 8    anguish and pain.  And I empathize with you, and I just wanted
 9    you to know that.
10              All right.  Look, the other thing I just want to put
11    on the record is as follows, which is after the last court
12    conference in the case, I made a phone call to the chief of the
13    general crimes unit, the supervisor of the AUSA that's assigned
14    to the case, asking him to take a look at the transcript of the
15    previous conferences and to make sure that there was adequate
16    supervision of the case.  I do that from time to time when I
17    have a concern that there may or may not be adequate
18    supervision.  I didn't want that conversation to have been
19    unrecorded.  I'm putting that on the record here.
20              MR. GELFAND:  Thank you.
21              THE COURT:  Very good.  I'll see you out in the
22    courtroom.  Thank you.
23              (Adjourned)
24
25
```